Case: 23-16022, 03/28/2025, ID: 12925320, DktEntry: 38, Page 1 of 53

No. 23-16022

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

Kari Lake; Mark Finchem, *Plaintiffs*,

and

Andrew D. Parker; Parker Daniels Kibort, LLC; Kurt B. Olsen; Olsen Law, PC,
Counsel for Plaintiffs, *Appellants*,

v.

Bill Gates, et al., *Defendants-Appellees*,

and

Adrian Fontes, et al., *Defendants.*

On Appeal from the United States District Court
for the District of Arizona
No. 22-cv-00677-JJT
Hon. John J. Tuchi

## PETITION FOR REHEARING EN BANC

Andrew D. Parker (AZ Bar No. 028314)
Joseph A. Pull (MN Bar No. 386968)
Parker Daniels Kibort LLC
123 N. Third Street, Suite 888
Minneapolis, MN 55401
(612) 355-4100
parker@parkerdk.com
pull@parkerdk.com
*Attorneys for Appellants Andrew D.*
*Parker and Parker Daniels Kibort LLC*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………iii

INTRODUCTION AND RULE 40(B) STATEMENT…………………………....1

BACKGROUND…………………………………………………………………4

  I. The Majority Opinion Will Have Substantial Chilling Effect by Affirming Sanctions Used to Send a Message……………………………………..…...6

      A.   The District Court's "Message" Misuses Rule 11……………...……6

      B.   Sanctions to Send a Message Concerning Matters of National Importance Are Particularly Harmful…………………………………8

      C.   Protecting Counsel from Punishment for a Client's Substantive Positions Is Critically Important in This Moment…………..……..........9

  II. The Majority Opinion Adopted a Pleading Standard Contrary to Law…………..10

      A.   The Pleadings at Issue Do Not Allege Falsely…………………………11

      B.   A Complaint Is Construed in the Light Favorable to the Pleader……14

      C.   Courts Should Construe Pleadings the Same Way for Purposes of Both Rule 11 and Rule 12…………………………………………….15

      D.   Sanctions Under 28 U.S.C. § 1927 Are Unsupported……………...…15

  III. The Majority Opinion Conflicts with *Townsend* with Respect to the "Pleading-As-A-Whole" Rule…………………………………………………………….16

  IV. The Majority Opinion Held, Contrary to Law, That Dismissal of Claims Is a Sufficient Basis for Sanctions………………………………………………17

CONCLUSION………………………………………………………………..18

Case: 23-16022, 03/28/2025, ID: 12925320, DktEntry: 38, Page 3 of 53

## TABLE OF AUTHORITIES

*Associated Indem. Corp. v. Fairchild Indus., Inc.*,
 961 F.2d 32 (2d Cir. 1992) .................................................................. 14

*Cooter & Gell v. Hartmax Corp.*,
 496 U.S. 384 (1990) .............................................................. 3, 11, 12

*Gaymar Indus. v. Cincinnati Sub-Zero Prods.*,
 790 F.3d 1369 (Fed. Cir. 2015) ....................................................... 14

*Gladstone, Realtors v. Bellwood*,
 441 U.S. 91 (1979) ........................................................................... 15

*Lake v. Fontes*,
 83 F.4th 1199 (9th Cir. 2023) ............................................................ 4

*Nation v. DOI*,
 876 F.3d 1144 (9th Cir. 2017) .......................................................... 15

*Navarro-Ayala v. Hernandez-Colon*,
 3 F.3d 464 (1st Cir. 1993) ...................................................... 3, 14, 16

*Ohio Repub. Party v. Brunner*,
 544 F.3d 711 (6th Cir. 2008), *vacated on other grounds*, 555 U.S. 5 (2008)
 (per curiam) .................................................................................... 5, 6

*Operating Eng'rs Pension Tr. v. A-C Co.*,
 859 F.2d 1336 (9th Cir. 1988) .................................................. 3, 10, 13

*Rodick v. City of Schenectady*,
 1 F.3d 1341 (2d Cir. 1993) ............................................................ 3, 14

*Strom v. United States*,
 641 F.3d 1051 (9th Cir. 2011) .......................................................... 10

*Townsend v. Holman Consulting Corp.*,
 929 F.2d 1358 (9th Cir. 1990) ................................................... *passim*

*Walleri v. Fed. Home Loan Bank*,
 83 F.3d 1575 (9th Cir. 1996) ........................................................... 15

*Young v. City of Providence*,
 404 F.3d 33 (1st Cir. 2005).............................................................. 16

Case: 23-16022, 03/28/2025, ID: 12925320, DktEntry: 38, Page 4 of 53

*Zaldivar v. City of Los Angeles*,
 780 F.2d 823 (9th Cir. 1986) .............................................................. 3-4

## Constitutional Provisions

28 U.S.C. § 1927 ................................................................................. 4, 15

## Statutes

A.R.S. § 16-446 ....................................................................................... 5

## Rules

Fed. R. Civ. P. 11 ........................................................................... *passim*
Fed. R. Civ. P. 12 ................................................................................ 15

## INTRODUCTION AND RULE 40(B) STATEMENT

The panel majority affirmed sanctions intended to "send a message" that lawsuits disputing the security of election equipment are forbidden. Op.12. It "openly proclaimed its desire to chill certain litigation—any legal challenges to the State's election procedures," the dissent observed. Op.26. The dissent declared, "Sanctioning attorneys to broadcast a district judge's displeasure with certain positions on a politically charged issue offends the 'extreme caution' required under Rule 11." Op.27. The sanctions read into the operative pleadings statements that were not made in the pleadings, and the statements that actually were made are not false. *See* Op.16-22 (dissent).

The majority's decision that sanctions may punish substantive types of legal claims and that sanctions may arise from reading false implications into pleadings scrambles the law of the Circuit concerning Rule 11. It threatens to close off access to counsel by unpopular parties or parties with unpopular claims. And, as the dissent warned, Op.15, it actualizes the very danger that this Court, en banc, anticipated and cautioned against in *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358 (9th Cir. 1990).

Each factor that supports en banc rehearing is present here. The majority opinion conflicts with the law of the Circuit in three respects. It creates a split of authority with other circuits concerning interpretation of pleadings for purposes of

1

Case: 23-16022, 03/28/2025, ID: 12925320, DktEntry: 38, Page 6 of 53

Rule 11. It contradicts the Supreme Court's admonition concerning Rule 11. And it does these things in the context of what the majority recognizes as "a topic of national concern" and "a topic of national importance," Op.12, sending a message that, in the words of the dissent, "threatens zealous advocacy and risks undermining the people's rights," Op.15. These are questions of exceptional importance. Indeed, as discussed below, the danger of government authorities punishing lawyers and law firms, including large firms like Perkins Coie, for the clients they represent or the positions they advocate is more salient now than ever. The Court should rehear this matter en banc to rectify the law.

Specifically:

1.  The majority approved the district court's statement that sanctions were imposed to "send a message," where the message was expressly intended to deter future counsel from disputing the security of Arizona's voting machines. *Cf.* Op.11-12 *with* Op.26-28. Deterring counsel from bringing specific kinds of claims or allegations is not a permissible purpose for sanctions.

2.  The majority relied upon tenuous inference to discern false allegations within the pleading at issue, reading them in the light least favorable to counsel where an alternate, non-false reading was more reasonable. *Cf.* Op.8-10 *with* Op.16-21. Its decision conflicts with the Supreme Court's

2

Case: 23-16022, 03/28/2025, ID: 12925320, DktEntry: 38, Page 7 of 53

admonition that Rule 11 must be construed in mind of its inherent potential to chill attorneys from undertaking controversial representations, *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990), and this Circuit's law that Rule 11 sanctions are "extraordinary" and must be "used with extreme caution." *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988). It also conflicts with the decisions of other circuits that when considering sanctions for allegedly frivolous claims, a district court should "resolve all doubts in favor of the signer," *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993), and "Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement." *Navarro-Ayala v. Hernandez-Colon*, 3 F.3d 464, 467 (1st Cir. 1993).

3. The majority adopted a "pleading-as-a-whole" analysis to find false allegations in the pleading, Op.9, contrary to *Townsend*'s rejection of a "pleading-as-a-whole" approach. 929 F.2d at 1363.

4. The majority bootstrapped a previous panel's ruling on the substantive merits of the underlying lawsuit directly into a finding of a Rule 11 violation, *cf.* Op.10 *with* Op. 22-23, contrary to established law that an unsuccessful claim is not automatically sanctionable. *Zaldivar v. City of*

3

*Los Angeles*, 780 F.2d 823, 830 (9th Cir. 1986) *abrogated on other grounds by Cooter & Gell*, 496 U.S. 384).

These matters cry out for a clear en banc statement of the correct law. The thorough dissent provides a road map, demonstrating in detail that the district court's cited purpose for sanctions was impermissible (the intention to "send a message" violated "both the text and purpose of Rule 11," Op.26) and the district court's cited bases for sanctions were unsupportable ("the district court took parts of the complaint out of context and construed them in the most unfavorable light," Op.21).

## BACKGROUND

In advance of the 2022 election, appellant Attorneys brought an action on behalf of two Arizona candidates seeking to prohibit use of electronic voting machines in future Arizona elections. 2-ER-260-310. Their First Amended Complaint ("FAC") alleged the machines unconstitutionally lacked adequate security against manipulation of voting data. 2-ER-303-304. The Attorneys later filed a Motion for Preliminary Injunction seeking the same relief preliminarily. 2-ER-162-198. The FAC was dismissed for lack of standing, and dismissal was affirmed by this Court on appeal. *Lake v. Fontes*, 83 F.4th 1199 (9th Cir. 2023).

The district court also entered an order ("Sanctions Order") sanctioning the Attorneys under Fed. R. Civ. P. 11 and 28 U.S.C. § 1927. ER-29-58. It found that the FAC and Motion for Preliminary Injunction falsely alleged Arizona did not use paper

4

ballots and did not subject electronic voting machines to testing. ER-35-41. The district court also found that the Motion for Preliminary Injunction was sanctionable for being filed too close to the 2022 election, under the *Purcell* doctrine. ER-56. The Sanctions Order expressly stated that sanctions were imposed to "send a message," which in substance was a warning that attorneys should not challenge the security of Arizona's election procedures. ER-58.

Nowhere did the FAC allege that Arizona does not use paper ballots. The FAC recognized that Arizona is required to "[p]rovide a durable paper document that visually indicates the voter's selections" if it uses electronic voting machines. 2-ER-299-300 (quoting A.R.S. § 16-446(B)). The FAC attacked Arizona's use of electronic voting machines including "optical scanners," which are machines used to scan paper ballots. 2-ER-264-265, 2-ER-298; Op.20 (dissent). The FAC assumed, as everyone knew, Arizona does use paper ballots.

Nowhere did the FAC allege Arizona did not test its electronic voting machines. The FAC expressly alleged Arizona's testing of the machines was not "neutral," "expert," nor "objective." 2-ER-265, 2-ER-270, 2-ER-272.

The Attorneys had a reasonable, good-faith basis for their position that the Motion for Preliminary Injunction was permissible under *Purcell*. 2-ER-150-152[1];

---

[1] A case cited in these pages of the brief to the district court, *Ohio Repub. Party v. Brunner*, 544 F.3d 711 (6th Cir. 2008) inadvertently omitted the subsequent procedural history "*vacated on other grounds*, 555 U.S. 5 (2008) (per curiam)."

Op.25 (dissent).

The panel majority affirmed the Sanctions Order in a ten-page opinion. A fifteen-page dissent concluded no sanction should have been imposed.

## I. The Majority Opinion Will Have Substantial Chilling Effect by Affirming Sanctions Used to Send a Message.

The Sanctions Order concluded with a statement that the district court was imposing sanctions "to send a message" because "the Court will not condone litigants ignoring the steps that Arizona has already taken toward" the end of "putting in place procedures to ensure that our elections are secure and reliable." ER-58. The district court accused the Attorneys of "furthering false narratives that baselessly undermine public trust at a time of increasing disinformation about, and distrust in, the democratic process." *Id.* Rule 11 does not permit a court to sanction counsel for these reasons.

### A. The District Court's "Message" Misuses Rule 11.

The panel majority applauded the district court's purpose in using Rule 11 to "send a message." Op.12. The majority excused the district court as only seeking to deter "baseless" litigation. *Id.* That reading cannot be squared with the district court's words. The district court went out of its way to specifically decry claims "ignoring the steps that Arizona has already taken" to secure elections. ER-58. It expressly declared that it was concerned with "undermin[ing] public trust at a time of increasing disinformation about, and distrust in, the democratic process." *Id.* The

district court's "message" was focused on *election* claims, not baseless claims. The "message" sets a dangerous precedent. Placing any government activity above judicial scrutiny is an invitation for government negligence, and for other government activities to be similarly shielded from challenge.

The district court's error runs deeper than its focus on election claims. The factual premise of the "message" is entirely at odds with Rule 11. The district court presumed the security of Arizona's electronic voting system as irrebuttable fact, a sacrosanct article of truth that an attorney cannot dispute consistent with Rule 11. But the district court had no basis upon which to make such a determination. The FAC was dismissed for lack of standing. No discovery and no trial ever occurred. Contrary to the panel majority, the district court's characterization of the claims brought in the FAC as "baseless" does not support sanctions against the Attorneys. Instead the "baseless" label shows the sanctions were improper. The district court had no adequate record as a factual matter and no power as a legal matter to make authoritative determinations that the FAC's allegations of insecure voting machines were baseless.[2]

Rule 11 does not permit sanctions for reasons of irrebuttable factual presumptions. Nor does it permit sanctions because a district court deems pleadings

---

[2] The Attorneys provided declarations and testimony from credentialed expert witnesses to support the allegations in the FAC. *See, e.g.*, 2-ER-87-88, 2-ER-209-240. They did not attempt to rely on bare, unsupported allegations.

7

as socially or electorally undesirable. Rule 11 merely requires attorneys to have a good faith basis for the allegations in a pleading. The district court's "message" and its leap to substantive conclusions about the security of Arizona's electronic voting machines were a misuse of Rule 11.

### B. Sanctions to Send a Message Concerning Matters of National Importance Are Particularly Harmful.

The panel majority correctly recognized that this action "concerns a topic of national concern" and "a topic of national importance." Op.12. From that consideration the majority drew precisely the wrong conclusion. The majority believed matters of national concern *increase* the importance of Rule 11 sanctions. *Id.* The opposite is true. Matters of national controversy are matters where courts should be most hesitant to impose sanctions, for many reasons.

First, a court's unnecessary sanctions in a matter of national concern lead to public distrust. Laypersons who disagree with the court's view expressed in a sanctions order are more likely to discount the court's objectivity. That outcome should be avoided when a court is asked to impose sanctions based on a contested interpretation of a pleading, as happened here.

Second, the imposition of "send a message" sanctions in cases of national importance devalues the meaning of sanctions. Ineluctably, many lay observers will interpret the sanctions to signal not attorney misconduct but rather judicial disapproval of a party or a claim, and will infer that sanctions imposed in *other* cases

also signal that a lawyer brought a claim the court believed to "undermine public trust," ER-58, or cause some other social disutility. That perception dilutes the message conveyed even by meritorious sanctions, just as overly frequent warnings lost efficacy in Aesop's fable.

Third, as the Court recognized in *Townsend*, application of Rule 11 inherently creates risk that "vigorous advocacy" will be "chilled" and "wrongs … go uncompensated" because attorneys for "fear of sanctions might turn down cases on behalf of individuals seeking to have the courts recognize new rights." 929 F.2d at 1363. The danger of which *Townsend* warns reaches zenith in matters of national concern and importance, litigation in which all citizens must perceive open access to the courts as a trusted and available means of dispute resolution. As the dissent quoted, the Arizona Supreme Court has emphasized this consideration in reversing attorney sanctions in an election-related case. Op.27-28. Here the panel majority chose to embrace the known danger rather than avoid or mitigate it.

### C. Protecting Counsel from Punishment for a Client's Substantive Positions Is Critically Important in This Moment.

The principle that all clients should have access to competent legal representation is foundational to our justice system, and it is under attack. On March 11, 2025, the law firm Perkins Coie filed an action alleging that the President had taken steps to terminate federal government contracts with its clients and to bar its lawyers from access to federal government buildings, in retaliation for the firm's

9

representation of clients and causes the President considered objectionable. No. 1:25-cv-00716 (D.D.C.). The appellant Attorneys in this case were sanctioned where they disputed a factual matter, the security of Arizona's election machines, that the district court considered objectionable. Now more than ever it is critical to affirm that lawyers can represent clients and causes that are unpopular, whether with the executive branch or the judicial branch, without fear of sanction.

The dissent warned, quoting *Townsend*, "It should go without saying that sanctions cannot be weaponized against litigants with certain political views or beliefs. Nor should we use them to deter attorneys from representing the unpopular or unorthodox. Long ago, we foresaw the dangers of Rule 11 abuse, warning that such sanctions 'will be used to chill vigorous advocacy.' . . . That concern has come to pass." Op.15.

## II.   The Majority Opinion Adopted a Pleading Standard Contrary to Law.

The majority opinion permits a district court to sanction counsel based on discretionary construction of a pleading to contain false implications that the pleading can reasonably be read to exclude. That standard is contrary to law. Rule 11 sets a "low bar" for attorneys to clear. *Strom v. United States*, 641 F.3d 1051, 1059 (9th Cir. 2011). Sanctions are an "extraordinary remedy, to be used with extreme caution." *Operating Eng'rs Pension Tr.*, 859 F.2d at 1345. Where arguments can be made that a claim is sanctionable but a non-sanctionable basis for the claim exists,

10

sanctions are not permitted. *See Townsend*, 929 F.2d at 1363 ("if there is a colorable claim to a particular type of relief on a given set of facts and the signer relies on an unsupportable legal theory to bolster his claim when a supportable one exists as well, the signer cannot be sanctioned under Rule 11") (explaining *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531 (9th Cir. 1986)). The majority's decision invites the harm that the Supreme Court and this Court have warned lurks within Rule 11, which "must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy." *Cooter & Gell*, 496 U.S. at 393. The Court should clarify, en banc, that these precedents mandate pleadings cannot be sanctioned for purported false implications if an alternate non-false construction is available.

### A. The Pleadings at Issue Do Not Allege Falsely.

It is undisputed that the FAC and the Motion for Preliminary Injunction never expressly claim Arizona doesn't use paper ballots. "[T]he district court couldn't point to a single statement in the complaint that expressly said that Arizonans do not vote by paper ballot." Op.17 (dissent). The district court admitted, "Plaintiffs argue that 'none of these paragraphs say that Arizona does not use paper ballots.' . . . That is true only in the most facile sense." ER-36. The dissent explained, in granular detail, why the FAC could not be reasonably read to allege Arizona does not use paper ballots. Op.16-21. The dissent identified ways in which the FAC assumed the

11

use of paper ballots, including an allegation that Arizona would tabulate votes through "optical scanners." Op.20. Optical scanners are machines that scan paper ballots. *Id.*

Undeterred, the panel majority found the FAC impliedly false, citing narrow excerpts from which the majority inferred a false allegation that Arizona does not use paper ballots. Op.9-10. The majority faulted this language without regard to context or the FAC's references to optical scanners, instead analyzing the language by means of non sequitur. "[T]he FAC repeatedly refers to 'electronic voting machines,'" the majority stated, *id.*, as if paper ballots and electronic voting machines are mutually exclusive. They are not. Arizona uses both. *See* Op.20 (dissent).

The majority also erroneously shifted the moving party's burden (to prove the pleadings contain a falsehood) onto the Attorneys (as a burden to prove the non-existence of a falsehood): "Lead Attorneys argue that 'the [first] amended complaint acknowledges, presumes, and requires that Arizona uses paper ballots.' Yet, the FAC makes no mention of the current use of paper ballots." Op.9. This is backward. In challenging the use of optical scanners and other electronic voting machines, the FAC had no obligation to plead a fact every voter in Arizona knows – that paper ballots are used in the optical scanners. The "low bar" of Rule 11 requires a movant to prove the challenged pleading alleged falsely; the non-moving party has no

12

obligation to plead commonly known facts as a defense against accusations of implied dishonesty. "[E]xtreme caution," *Operating Eng'rs Pension Tr.*, 859 F.2d at 1345, does not permit sanctions based on discretionary reading of a disputed implication into a pleading. A pleading that neither expressly affirms nor denies the use of paper ballots, but presumes the use of paper ballots, does not offend Rule 11. The majority's approach converts Rule 11 into a trap for the unwary lawyer whose language unwittingly permits unintended interpretation as false, even where the false interpretation is tenuous.

A second alleged falsity in the FAC concerned the issue of Arizona's testing of electronic voting machines. The district court construed the FAC as falsely alleging Arizona does not perform any testing. ER-42-43. The FAC actually alleges Arizona does not perform "neutral," "expert," and "objective" testing. 2-ER-265, 2-ER-270, 2-ER-272-273; Op.21 (dissent). An attorney is permitted without violating Rule 11 to dispute whether Arizona's statutorily required testing is sufficiently "neutral," "expert," and "objective."

The panel majority appears to have misunderstood this issue. It stated that the Attorneys "contend that they never alleged that 'Arizona does not have objective, neutral, and expert testing processes for electronic voting machines." Op.10. On the contrary, the Attorneys *agree* that the FAC alleged Arizona does not have objective, neutral, and expert testing. 2-ER-91-92. That allegation does not violate Rule 11. As

13

the dissent explained, "the *defendant* in the case—the Arizona Secretary of State—had tested the equipment" and "a company accredited by a federal election commission had also conducted testing," but "Rule 11 doesn't require one side to take the opposing side's word at face value," and whether testing is sufficiently "objective" and "neutral" is a matter of judgment, "not easily reduced to binary determinations of truth or falsity." Op.21.

A plaintiff is not forbidden by Rule 11 from challenging the say-so of the state that its testing procedures – or any other state-conducted procedures, for that matter – are objective, neutral, or expert.

### B. A Complaint Is Construed in the Light Favorable to the Pleader.

The majority's unsupported view of Rule 11 is contrary to the decisions of other circuits concerning how pleadings are to be read for purposes of Rule 11. The Second Circuit has repeatedly stated that a district court considering sanctions for allegedly frivolous claims should "resolve all doubts in favor of the signer." *E.g. Rodick*, 1 F.3d at 1350; *Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992). The First Circuit held, "Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement." *Navarro-Ayala*, 3 F.3d at 467. *See also Gaymar Indus. v. Cincinnati Sub-Zero Prods.*, 790 F.3d 1369, 1376-77 (Fed. Cir. 2015) ("overstatements do not rise to the level of sanctionable litigation misconduct"). These circuits are correct. Where a pleading

14

can reasonably be construed as *not* speaking falsely, Rule 11 prohibits reading a false allegation into it.

### C. Courts Should Construe Pleadings the Same Way for Purposes of Both Rule 11 and Rule 12.

Construing allegations favorably toward the pleader aligns Rule 11 with Rule 12, which requires the same. *See Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 112 (1979); *Nation v. DOI*, 876 F.3d 1144, 1163 n.24 (9th Cir. 2017) ("our obligation to construe the complaint favorably to the plaintiff"). For purposes of a Rule 12 dismissal motion, a district court must give the plaintiff "the benefit of every reasonable inference to be drawn from well-pleaded facts." *Walleri v. Fed. Home Loan Bank*, 83 F.3d 1575, 1580 (9th Cir. 1996). There is no reason to vary the standard for construing a pleading between Rule 11 and Rule 12. A pleading would not be dismissed on the basis of a disputed purported implication, where an alternate reading was available. Nor should it be sanctioned.

### D. Sanctions Under 28 U.S.C. § 1927 Are Unsupported.

The majority opinion cited the paper ballot issue and the neutral, objective testing issue as bases to sanction the Attorneys under 28 U.S.C. § 1927 as well as Rule 11. Op.13. For purposes of § 1927, the majority also held that the Attorneys lacked a good faith basis to file their Motion for Preliminary Injunction in early June 2022 in advance of the November 2022 election, based on the *Purcell* doctrine. *Id*. The Attorneys had a good faith basis for their view of *Purcell*. The dissent

Case: 23-16022, 03/28/2025, ID: 12925320, DktEntry: 38, Page 20 of 53

recognized, "Notwithstanding *Purcell*, parties will sometimes seek election-related relief within months of an election—and still prevail." Op.25.

## III. The Majority Opinion Conflicts with *Townsend* with Respect to the "Pleading-As-A-Whole" Rule.

The "pleading-as-a-whole" rule concerns whether a pleading should be read "as a whole" to determine whether it is sanctionable under Rule 11. In *Townsend*, this Court overruled its prior holding that "Rule 11 permits sanctions only when the pleading as a whole is frivolous or of a harassing nature, not when one of the *allegations* or arguments in the pleadings may be so characterized." 929 F.2d at 1363 (quoting *Murphy v. Business Card Tomorrow, Inc.*, 854 F.2d 1202, 1205 (9th Cir. 1988)).

With respect to the FAC, the district court and the panel majority applied contrary statements of the law concerning the "pleading-as-a-whole" rule. In the district court, the Attorneys argued that the paper ballot issue could not sustain sanctions because the FAC as a whole presumed Arizona uses paper ballots.[3] 2-ER-90-91. The district court disagreed, extending *Townsend* to the issue of allegedly false allegations and stating, "the Ninth Circuit long ago expressly rejected the

---

[3] The First Circuit uses a pleading-as-a-whole approach to evaluate whether pleadings make false statements. *Navarro-Ayala*, 3 F.3d at 467; *see Young v. City of Providence*, 404 F.3d 33, 41 (1st Cir. 2005) ("That a hasty reader might take the first paragraph out of context is not in the present circumstances enough to brand the memorandum as false.").

'pleading-as-a-whole' rule." ER-41 (citing *Townsend*, 929 F.2d at 1364-65). The panel majority stated, "We instead consider whether the FAC, taken as a whole, is subject to sanction." Op.9 (citing *Townsend*, 929 F.2d at 1364). The majority did not analyze or address the inconsistency between its own view and the district court's view, and its reasoning contradicts *Townsend. See* Op.9.

When the Attorneys argued that the FAC was not sanctionable, construed as a whole, the district court held the pleading-as-a-whole rule no longer exists in this Circuit. When the Attorneys showed no individual statement in the FAC was sanctionable, the panel majority affirmed the district court's sanction on the basis that the FAC must be construed as a whole. The en banc Court should dispel the evident confusion concerning the pleading-as-a-whole rule.

## IV. The Majority Opinion Held, Contrary to Law, That Dismissal of Claims Is a Sufficient Basis for Sanctions.

In a single paragraph, the panel majority held the district court had an adequate basis to sanction the Attorneys for bringing claims based on "speculation and conjecture" merely because this Court previously characterized the claims as based on "speculation and conjecture" when affirming dismissal of the FAC for lack of standing. Op.10. The majority's conclusion contradicts established law. As the dissent explained, an unsuccessful claim is not equivalent to a sanctionable claim. Op.22-23. A court cannot impose sanctions merely because a claim was dismissed. "Rule 11 sanctions don't apply when the 'pleader' has 'a "good faith argument" for

his or her view of what the law is, or should be.'" *Id*. at 22 (quoting *Zaldivar*, 780 F.2d at 831). The panel majority did precisely that, transmuting the "speculation and conjecture" basis for dismissal of the FAC directly into a basis for imposing sanctions. Op.10. The majority opinion did not even mention, much less consider, whether the Attorneys had a good faith argument for the allegations the previous panel considered "speculation and conjecture." *Id.* Here, the Attorneys challenged the constitutionality of the manner of tabulating the vote in Arizona, after extensive inquiry with multiple experts prior to bringing the case. *See* 2-ER-163, 2-ER-200-259. They had a good faith argument. The majority's error injects confusion into the law of the Circuit concerning the distinction between an unsuccessful claim and a sanctionable claim.

## CONCLUSION

The Court should rehear this appeal en banc and vacate the district court's sanctions.

Respectfully Submitted,

DATED: March 28, 2025        **PARKER DANIELS KIBORT LLC**

By  /s/  *Andrew D. Parker*

   Andrew D. Parker (AZ Bar No. 028314)
   Joseph A. Pull (MN Bar No. 386968)
   123 N. Third Street, Suite 888
   Minneapolis, MN 55401
   (612) 355-4100
   parker@parkerdk.com
   pull@parkerdk.com

   *Attorneys for Appellants Andrew D. Parker*
   *and Parker Daniels Kibort LLC*

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form: https://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** 23-16022

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel

rehearing/petition for rehearing en banc/response to petition is *(select one)*:

◉ Prepared in a format, typeface, and type style that complies with Fed. R. App. P.
32(a)(4)-(6) and **contains the following number of words:** 4,158 .
*(Petitions and responses must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** /s/ Andrew D. Parker **Date** March 28, 2025
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 11** *Rev. 12/01/24*

# CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system, except Appellant Kurt Olsen, who has received the filing and stated intent to file a joinder.

March 28, 2025

_s/Andrew D. Parker_
Andrew D. Parker

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KARI LAKE; MARK FINCHEM,

*Plaintiffs,*

and

ANDREW D. PARKER; PARKER
DANIELS KIBORT, LLC; KURT B.
OLSEN; OLSEN LAW, PC, Counsel
for Plaintiffs,

*Appellants,*

v.

BILL GATES, as a member of the
Maricopa County Board of
Supervisors; CLINT HICKMAN, as a
member of the Maricopa County
Board of Supervisors; JACK
SELLERS, as a member of the
Maricopa County Board of
Supervisors; THOMAS GALVIN, as a
member of the Maricopa County
Board of Supervisors; STEVE
GALLARDO, as a member of the
Maricopa County Board of
Supervisors,

*Defendants-Appellees,*

No. 23-16022

D.C. No. 2:22-cv-
00677-JJT

OPINION

2                          LAKE V. GATES

and

ADRIAN FONTES, Arizona Secretary
of State; MARICOPA COUNTY
BOARD OF SUPERVISORS; REX
SCOTT, as a member of the Pima
County Board of Supervisors; MATT
HEINZ, as a member of the Pima
County Board of Supervisors;
SHARON BRONSON, as a member
of the Pima County Board of
Supervisors; STEVE CHRISTY, as a
member of the Pima County Board of
Supervisors; ADELITA GRIJALVA,
as a member of the Pima County
Board of Supervisors; PIMA
COUNTY BOARD OF
SUPERVISORS,

                    *Defendants*.

Appeal from the United States District Court
for the District of Arizona
John Joseph Tuchi, District Judge, Presiding

Argued and Submitted September 11, 2024
San Francisco, California

Filed March 14, 2025

Before: Kim McLane Wardlaw, Ronald M. Gould, and
Patrick J. Bumatay, Circuit Judges.

Opinion by Judge Gould;
Dissent by Judge Bumatay

## SUMMARY[*]

### Attorney Sanctions

The panel affirmed the district court's imposition of sanctions under Federal Rule of Civil Procedure 11(c) and 28 U.S.C. § 1927 on plaintiffs' lead attorneys Andrew J. Parker and Kurt Olsen (collectively "Lead Attorneys") in an action concerning Arizona's voting system.

Plaintiffs filed a complaint in Arizona district court alleging that Arizona's current voting system, which relies upon electronic elements, insufficiently protects the rights of Arizona voters and must be replaced by a system using exclusively hand-counted paper ballots. The district court dismissed the operative complaint for lack of Article III standing, and this court affirmed. *Lake v. Fontes*, 83 F.4th 1199, 1204 (9th Cir. 2023) (per curiam). The district court subsequently granted defendants' motion for sanctions and held Lead Attorneys and their law firms liable for $122,200.00 in fees.

The panel held the district court did not abuse its discretion in awarding attorneys' fees under Rule 11(c) because Lead Attorneys made false, misleading, and unsupported factual assertions in their first amended

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Case: 23-16022, 03/28/2025, ID: 12925320, DktEntry: 38, Page 29 of 53

complaint ("FAC") and motion for preliminary injunction, and did not undertake a reasonable pre-filing inquiry.

Central among the false and misleading allegations identified by the district court were the claims that Arizona does not use paper ballots and that Arizona voting machines are not tested. The panel held that the district court did not abuse its discretion in finding that these factually misleading statements rendered the FAC factually insufficient and open to sanction. Further, the district court did not abuse its discretion in concluding that Lead Attorneys did not conduct a reasonable inquiry. Facts about the Arizona voting system are widely available, and the current voting system in which paper ballots are tabulated electronically has been in place for many years.

The panel further held that the district court's express finding that Lead Attorneys' behavior and timing in bringing a motion for a preliminary injunction was reckless and met the standard for bad faith under § 1927 was not clearly erroneous.

Dissenting, Judge Bumatay wrote that while the complaint may not have been drafted with perfect precision and Parker and Olsen might have played hardball with Arizona's attorneys, nothing they did was deceptive, intentionally false, or beyond the bounds of zealous advocacy. Read in context, their complaint challenged the reliability of Arizona's use of electronic systems to count ballots. They never asserted that Arizona did not use paper ballots, which drove the district court's sanctions decision. Moreover, the district court improperly imposed sanctions to "send a message" to other litigants who might raise election-law disputes.

## COUNSEL

Joseph A. Pull (argued) and Andrew D. Parker, Parker Daniels Kibort LLC, Minneapolis, Minnesota; Kurt Olsen, Olsen Law PC, Washington, D.C.; for Plaintiffs-Appellants.

Emily M. Craiger (argued), The Burgess Law Group LLC, Phoenix, Arizona; Joseph J. Branco, Assistant Counsel, Office of the Arizona Attorney General, Phoenix, Arizona; Sean M. Moore, Joseph E. La Rue, and Thomas P. Liddy, Deputy County Attorneys, Civil Services Division; Rachel H. Mitchell, Maricopa County Attorney; Maricopa County Attorney's Office, Phoenix, Arizona; for Defendants-Appellees.

## OPINION

GOULD, Circuit Judge:

Lead attorneys for the Plaintiffs, Andrew D. Parker and Kurt Olsen (collectively, "Lead Attorneys"), appeal the district court's imposition of sanctions under Federal Rule of Civil Procedure 11(c) and under 28 U.S.C. § 1927. We conclude that the district court did not abuse its discretion in awarding attorneys' fees under Rule 11(c) because Lead Attorneys made false, misleading, and unsupported factual assertions in their first amended complaint ("FAC") and motion for preliminary injunction and did not undertake a reasonable pre-filing inquiry. We further conclude that the district court's determination that the Lead Attorneys acted in bad faith was not clearly erroneous, and that it therefore did not err by imposing sanctions under 28 U.S.C. § 1927.

6                        LAKE V. GATES

## BACKGROUND

The underlying dispute in this matter concerns Arizona's voting system.  Plaintiffs filed a complaint in Arizona district court alleging that Arizona's current voting system, which relies upon electronic elements, insufficiently protects the rights of Arizona voters and must be replaced by a system using exclusively hand-counted paper ballots.  Plaintiffs also filed a motion for a preliminary injunction seeking to prohibit the use of computerized equipment in the administration of Arizona elections.  The district court dismissed the operative complaint for lack of Article III standing, and we affirmed.  *Lake v. Fontes*, 83 F.4th 1199, 1204 (9th Cir. 2023) (per curiam).

On December 1, 2022, the district court granted Defendants' motion for sanctions, ordered the Plaintiffs to pay Defendants' attorneys' fees, and ordered the parties to file memoranda regarding the proper amount of attorneys' fees.  Lead Attorneys and Defendants filed responsive briefing and, on May 24, 2023, the district court held oral argument on Defendants' application for attorneys' fees.  On July 14, 2023, the district court issued an order granting in part and denying in part Defendants' application for attorneys' fees and staying the obligation to pay the fees pending resolution of all appeals.  The district court's order held Lead Attorneys and their law firms liable for $122,200.00 in fees.  This appeal follows.

## DISCUSSION

Although the substantive claim in this matter was dismissed for lack of standing, federal courts have jurisdiction over "collateral issues after an action is no longer pending," including costs, attorneys' fees, or sanctions, because such motions "are 'independent

Case: 23-16022, 03/28/2025, ID: 12925320, DktEntry: 38, Page 32 of 53

proceeding[s] supplemental to the original proceeding and not a request for a modification of the original decree.'" *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 170 (1939)). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. *Kaass Law v. Wells Fargo Bank*, 799 F.3d 1290, 1292 (2015).

## I. Rule 11 Sanctions

Rule 11(b) states that, by "signing, filing, submitting or later advocating" for a "pleading, written motion, or other paper," an attorney certifies that:

> (1) it is not presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b). A complaint that does not comply with any one of these requirements gives grounds for monetary sanctions. *See* Fed. R. Civ. P. 11(c); *see also Truesdell v. S. Cal. Permanente Med. Grp.*, 293 F.3d 1146, 1153 (9th Cir. 2002). In analyzing whether a complaint is sanctionable under Rule 11, we employ an objective standard of reasonableness and do not consider the attorney's subjective

8                                LAKE V. GATES

good faith. *Bus. Guides, Inc. v. Chromatic Commc'ns Enter., Inc.*, 892 F.2d 802, 811 (9th Cir. 1989), *aff'd* 498 U.S. 533 (1991) (holding that Rule 11 does not allow for a "pure heart, empty head" defense (citation omitted)).

We review the award of Rule 11 sanctions for abuse of discretion. *Montrose Chem. Corp. of Cal. v. Amer. Motorists Ins. Co.*, 117 F.3d 1128, 1133 (9th Cir. 1997). To impose sanctions under Rule 11, the district court must determine that a pleading is "*both* baseless *and* made without a reasonable and competent inquiry." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 434 (9th Cir. 1996) (quoting *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990)). "Because the district court is '[f]amiliar with the issues and litigants, the district court is better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard mandated by Rule 11.'" *Montrose Chemical Corp.*, 117 F.3d at 1133 (quoting *Cooter & Gell*, 496 U.S. at 402). A district court "necessarily abuse[s] its discretion if it base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell*, 496 U.S. at 405.

## A. Factual Support

The district court here held that the Lead Attorneys violated Rule 11 when they filed the FAC because the FAC contained baseless allegations. Central among these false and misleading allegations identified by the district court are the claims that Arizona does not use paper ballots and that Arizona voting machines are not tested. Lead Attorneys contend that the district court abused its discretion in determining that the FAC made such claims, which Lead Attorneys concede would be false. Lead Attorneys also

Case: 23-16022, 03/28/2025, ID: 12925320, DktEntry: 38, Page 34 of 53

point to some supported allegations in the FAC, contending that this demonstrates that the factual allegations "have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

But the existence of some supported allegations does not insulate Lead Attorneys from sanctions based on other, unsupported allegations in the FAC. As previously explained, "the mere existence of one non-frivolous claim is not dispositive." *Townsend*, 929 F.2d at 1364. We instead consider whether the FAC, taken as a whole, is subject to sanction. *Id.* The FAC alleged that Arizona uses an electronic voting system that is subject to manipulation and that must be replaced by a paper voting system to protect Plaintiffs' voting rights. For this reason, the extent and manner of digitization in the current Arizona voting system is important in assessing the complaint as a whole. The allegations about Arizona not using paper ballots and suggestion it uses exclusively an "electronic voting system subject to manipulation" were not supported by any evidence placed in the record. And if unsupported factual allegations are present in the FAC, the district court did not abuse its discretion in imposing sanctions. *See Truesdell*, 293 F.3d at 1153–54.

Our review of the FAC demonstrates that all of the unsupported factual allegations identified by the district court are present. We consider first the most central and most contested of these unsupported allegations: that Arizona does not use paper ballots. Lead Attorneys argue that "the [first] amended complaint acknowledges, presumes, and requires that Arizona uses paper ballots." Yet, the FAC makes no mention of the current use of paper ballots. Instead, the FAC repeatedly refers to "electronic

Case: 23-16022, 03/28/2025, ID: 12925320, DktEntry: 38, Page 35 of 53

voting machines" and asks that the court order "an election conducted by paper ballots, as an alternative to the current framework." A reasonable person reading the amended complaint would believe, contrary to the facts, that Arizona does not use paper ballots at all in its elections.

Similarly, though Lead Attorneys contend that they never alleged that "Arizona does not have objective, neutral, and expert testing processes for electronic voting machines," paragraph 57 of the amended complaint states that "Arizona intends to rely on electronic voting systems . . . without . . . subjecting them to neutral, expert analysis." The plain meaning of the text supports the district court's finding, and the district court did not abuse its discretion in finding that these factually misleading statements rendered the FAC factually insufficient and open to sanction. *See Truesdell*, 293 F.3d at 1153.

## B. Speculation and Reasonable Pre-Filing Inquiry

Lead Attorneys also challenge the district court's holding that their claims were based on "speculation and conjecture" and that Lead Attorneys did not conduct a reasonable pre-filing inquiry. As an initial matter, although Lead Attorneys contest the district court's characterization of the FAC as based on "speculation and conjecture," we have already used the same language in affirming the dismissal of the FAC for lack of standing. *See Lake*, 83 F.4th at 1204 (holding that the FAC posits only "conjectural allegations" and "speculation" as to any injury suffered by the plaintiffs). The district court did not abuse its discretion by reaching the same conclusion.

To be sanctioned under Rule 11, attorneys must file a pleading which is "*both* baseless *and* without a reasonable and competent inquiry." *In re Keegan Mgmt. Co., Sec.*

Case: 23-16022, 03/28/2025, ID: 12925320, DktEntry: 38, Page 36 of 53

*Litig.*, 78 F.3d 431, 434 (9th Cir. 1996) (emphasis in original) (quoting *Townsend*, 929 F.2d at 1362). A reasonable inquiry is "an inquiry reasonable under all of the circumstances of a case." *Townsend*, 929 F.2d at 1364 (citation and quotation marks omitted). "As the Supreme Court noted, if a lawyer discovers that his [or her] client has a potential cause of action only a short time before the statute of limitations will expire, a more cursory inquiry will be tolerated than when he [or she] has ample time to investigate." *Id.* (citation omitted).

Further, the district court did not abuse its discretion in concluding that Lead Attorneys did not conduct a reasonable inquiry. As explained *supra* Section I.A, the FAC contained misleading and false statements about the Arizona voting system. Facts about the Arizona voting system are widely available, and the current voting system in which paper ballots are tabulated electronically has been in place for many years. As the district court stated, in presenting incorrect facts to the court, Lead Attorneys "either failed to conduct the reasonable and factual legal inquiry required under Rule 11, or they conducted such an inquiry and filed this lawsuit anyway." In either event, "after conducting an objectively reasonable inquiry into the facts and law," no reasonable attorney "would have found the complaint to be well-founded." *Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005) (citation omitted).

## C. Improper Motivation

Lead Attorneys contend that the district court's sanctions were improperly motivated by a desire to suppress "litigation concerning Arizona's [electronic voting system]." In

support of this argument, plaintiffs' attorneys cite the district
court's statement that

> Imposing sanctions in this case is not to
> ignore the importance of putting in place
> procedures to ensure that our elections are
> secure and reliable. It is to make clear that
> the Court will not condone litigants ignoring
> the steps that Arizona has already taken
> toward this end and furthering false
> narratives that baselessly undermine public
> trust at a time of increasing disinformation
> about, and distrust in, the democratic process.
> It is to send a message to those who might file
> similarly baseless suits in the future.

But Lead Attorneys mischaracterize the nature of the
district court's concern. The district court's statement does
not blanketly prohibit all voting-related litigation. Rather,
the district court stressed that plaintiffs' attorneys are being
sanctioned because they filed a *baseless* action. That the
action concerns a topic of national concern only increases
the importance of Rule 11's deterrent function. Ensuring
that attorneys do not abuse the court process by filing
misleading and false claims is a legitimate function of Rule
11 and is not undermined by the subject of the litigation. *See
Cooter & Gell*, 496 U.S. at 393. To the contrary, that Lead
Attorneys may mislead the public and cause baseless
concern about a topic of national importance renders Rule
11's deterrent function more important than in cases of
purely private concern.

Case: 23-16022, 03/28/2025, ID: 12925320, DktEntry: 38, Page 38 of 53

## II. 28 U.S.C. § 1927

Lead Attorneys also contest the district court's imposition of sanctions pursuant to 28 U.S.C. § 1927. Under § 1927, an attorney may be required to pay "excess costs, expenses, and attorneys' fees" for "multipl[ying] the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. We have held that "[s]anctions pursuant to section 1927 must be supported by a finding of subjective bad faith." *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015) (citation omitted). "[B]ad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *Id.* (citation omitted). The district court found that Lead Attorneys brought the motion for preliminary injunction in bad faith based on the motion's timing and its frivolous nature.

Whether an attorney acted recklessly or in bad faith is a factual finding that "[w]e will reverse . . . only if [it is] clearly erroneous." *Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1117 (9th Cir. 2000). Here, the district court's finding was not clearly erroneous. The motion for preliminary injunction was frivolous for the same reasons as the FAC, as it reiterated many of the same factual misrepresentations. The timing of the motion further supports the district court's holding. Plaintiffs waited nearly seven weeks after filing their initial complaint to file the motion for preliminary injunction, despite the alleged urgency of the situation. By the time of the hearing on the preliminary injunction motion that sought a complete overhaul of the Arizona election system, less than four months remained before the next election. In other words, the motion sought relief that was impossible under the time

constraints. The district court's express finding that this behavior was reckless and met the standard for bad faith under § 1927 is not clearly erroneous. We therefore affirm the district court's imposition of § 1927 sanctions.

## CONCLUSION

We affirm the district court's grant of Defendants' motion for sanctions.

**AFFIRMED.**

---

BUMATAY, Circuit Judge, dissenting:

In this case, candidates for political office—Kari Lake and Mark Finchem—sought to challenge the vote-counting procedures used by the State of Arizona. They feared that Arizona's use of electronic tabulation systems makes them susceptible to hacking by non-governmental actors. With the help of their attorneys, Andrew Parker and Kurt Olsen, Lake and Finchem filed a complaint that was ultimately unsuccessful. Indeed, I agreed that Lake and Finchem failed to persuasively establish standing to bring their claims. *See Lake v. Fontes*, 83 F.4th 1199, 1201 (9th Cir. 2023). But asserting an *unpersuasive* claim is different from asserting a *sanctionable* one. Rather than concluding this litigation, the district court sanctioned Parker and Olsen under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927.

While the complaint may not have been drafted with perfect precision and Parker and Olsen might have played hardball with Arizona's attorneys, nothing they did was deceptive, intentionally false, or beyond the bounds of zealous advocacy. Read in context, their complaint challenged the reliability of Arizona's use of electronic

systems to count ballots. They *never* asserted that Arizona did not use paper ballots, which drove the district court's sanctions decision. After all, voting with paper ballots was only part of their concern for the reliability of Arizona's vote counting procedures. And no party to the litigation was fooled. Arizona's attorneys fully understood the nature of the claims. But the district court pressed forward, seemingly concerned that the *public* might misconstrue their claims. How the public might misread the legalese of a complaint is not a basis for imposing sanctions.

Even more troubling, the district court expressly sanctioned Parker and Olsen to "send a message" to other litigants who might raise election-law disputes. *Lake v. Hobbs*, 643 F. Supp. 3d 989, 1013 (D. Ariz. 2022). That was improper. Sanctions are not a tool for punishing disfavored litigants or their attorneys. It should go without saying that sanctions cannot be weaponized against litigants with certain political views or beliefs. Nor should we use them to deter attorneys from representing the unpopular or the unorthodox. Long ago, we foresaw the dangers of Rule 11 abuse, warning that such sanctions "will be used to chill vigorous advocacy." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1364 (9th Cir. 1990) (en banc). That concern has come to pass.

Unfortunately, here in the Ninth Circuit, the message is now loud and clear: challenge an election, and judges stand with sanctions at the ready if they disapprove of your claim. Because this message threatens zealous advocacy and risks undermining the people's rights, I respectfully dissent.

16                          LAKE V. GATES

## I.

### Rule 11 Sanctions Were Improper

"Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988). Rule 11 sets a "low bar" for attorneys to clear. *See Strom v. United States*, 641 F.3d 1051, 1059 (9th Cir. 2011). A district court abuses its discretion in imposing Rule 11 sanctions when it "base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

The district court identified four sets of sanctionable conduct: (1) false allegations in the complaint about the use of paper ballots; (2) false allegations in the complaint about the testing of Arizona's election equipment; (3) reliance on speculation and conjecture; and (4) failure to conduct a reasonable pre-filing inquiry. It was an abuse of discretion to sanction attorneys Parker and Olsen on these grounds.

### A. Allegations about Paper Ballots

At the heart of the district court's sanctions ruling was its belief that Lake and Finchem's complaint falsely stated that Arizona voters do not cast paper ballots. But that's wrong. First, the district court mischaracterized Lake and Finchem's argument. They did not dispute that Arizonans vote by paper ballot. Rather, their complaint sought to vindicate the right "to have their ballots, and all ballots cast together with theirs, counted accurately and transparently." Am. Compl. ¶ 2. So their challenge focused on the security and operability of Arizona's vote *counting* system. They argued that Arizona's use of electronic vote-counting systems made the process vulnerable to manipulation. *Id.* at

¶ 153. Indeed, much of the complaint raised concerns about the hacking risks associated with vote-counting machines. They wanted to replace that electronic-tabulating system with one in which votes are tabulated by humans. *Id.* True, they argued that hand ballots must *also* be part of an accurate and transparent voting system. But because they stressed vote *tabulation*—not vote casting—their argument neither asserts nor implies, as the district court wrongly concluded, that Arizona does not use paper ballots. Only by misconstruing their arguments and drawing all inferences against Lake and Finchem did the district court reach its finding of sanctionable conduct. The district court reasoned that their request for injunctive relief was "entirely frivolous because [Arizona is] already doing what [they] want the [State] to do." *Lake*, 643 F. Supp. 3d at 998. But Arizona's continued reliance on electronic tabulation is undisputed. So the district court's view was simply wrong.

Second, the district court couldn't point to a single statement in the complaint that expressly said that Arizonans do not vote by paper ballot. The district court itself admitted as much. *Id.* ("Plaintiffs argue that 'none of these paragraphs say that Arizona does not use paper ballots.' . . . That is true only in the most facile sense."). This is reason enough to reverse the sanctions decision. Rather than relying on clear language from the complaint, the district court cherry-picked isolated snippets and applied faulty logic to conclude that "Plaintiffs requested that the Court order Arizona to do something that they contend it is not currently doing: to use paper ballots." *Id.*

Case: 23-16022, 03/28/2025, ID: 12925320, DktEntry: 38, Page 43 of 53

Take the district court's reliance on Paragraph 7 of the complaint. Paragraph 7 said,

> Through this Action, Plaintiffs seek an Order that Defendants collect and count votes through a constitutionally acceptable process, which relies on tried and true precepts that mandates [sic] integrity and transparency. This includes votes cast by hand on verifiable paper ballots that maintains voter anonymity; votes counted by human beings, not by machines; and votes counted with transparency, and in a fashion observable to the public.

*Id.* The district court focused on a single phrase— "[t]his includes votes cast by hand on verifiable paper ballots that maintains voter anonymity"—to suggest that Lake and Finchem claimed Arizona voters do not currently use paper ballots. That's just wrong as a matter of logic. Read in context, the paragraph is advocating two things *in conjunction*: voting by paper ballot *and* vote counting by humans. It's undisputed that Arizona did not hand count votes. So Lake and Finchem were proposing a different voting system—one with both paper ballots and human tabulation—which did not then exist. This doesn't mean paper ballots were not already in use.

Likewise, the district court faulted Paragraph 153 of the complaint for stating that "Plaintiffs seek for the Court to Order, an election conducted by paper ballot, as an alternative to the current framework." *Id.* But the district court disregarded the context of that statement. Right before it was the header: "Voting on Paper Ballots and Counting

Case: 23-16022, 03/28/2025, ID: 12925320, DktEntry: 38, Page 44 of 53

Those Votes by Hand Is the Most Effective and Presently the Only Secure Election Method." Am. Compl. at 38. And just after that statement were nine bullet points detailing how votes cast on paper ballots should be counted by hand. *Id.* at 38–39. Read in full, the complaint was again advocating both paper ballots and human tabulation. The district court improperly assumed that the "alternative" system referred to in Paragraph 153 must mean a different system in all respects from the current system. But an "alternative" framework need not be different in *every* respect. The fact that the proposed "alternative" framework includes votes cast on paper ballots—just like the current practice—does not suggest, let alone assert, that paper ballots are not already used.

Next, the district court took aim at Paragraphs 58 to 60 of the complaint because they described Arizona's move from an "auditable paper-based system" to a "computer-based system." *Lake*, 643 F. Supp. 3d at 998. The complaint alleged that "[b]illions of federal dollars were spent to move states, including Arizona, from paper-based voting systems to electronic, computer-based systems." Am. Compl. ¶ 57. The district court deemed these allegations false because they "more than impl[y] a transition away from paper ballots." *Lake*, 643 F. Supp. 3d at 999. To justify this, the district court cited the Election Assistance Commission's definition of a "paper-based voting system" as one that "records votes, counts votes, and tabulates the vote count, using one or more ballot cards or paper ballots." *Id.* But the district court ignored crucial context. Just one paragraph earlier, the complaint stated that "Arizona intends to rely on electronic voting systems to record some votes and to tabulate *all* votes cast in the State of Arizona in the 2022 Midterm Election[.]" Am. Compl. ¶ 57; *see also id.* ¶ 68

("[M]any Arizonans will cast their votes on Dominion [ballot marking devices], while nearly *all* Arizonans will have their votes tabulated with Dominion machines."). Earlier, the complaint explained why *some* voters must vote by electronic means: "[v]oters who may have hearing or visual impairments may cast their votes with the aid of electronic ballot marking devices[.]" *Id.* ¶ 16. So the complaint expressly recognized that Arizona uses electronic voting systems to record only "some" votes (i.e., those with disabilities). The direct implication is that the rest of votes are cast in another way (i.e., on paper ballots). But the main thrust of the complaint was not about how votes are cast but how they are counted. It alleged—correctly and uncontested—that "*all*" votes in Arizona are tabulated by "electronic voting systems."

Indeed, the complaint explicitly stated that "[e]very county in Arizona intends to tabulate votes cast . . . through optical scanners[.]" Am. Compl. ¶ 14. As the name implies, "optical scanners" scan paper ballots. The complaint then directly challenged the use of optical scanners, arguing that "[e]very county in Arizona . . . can simply and securely count votes cast on *paper ballots* without using centralized machine-counting or computerized optical scanners." *Id.* ¶ 154 (emphasis added). This makes clear the complaint's focus was on opposing the use of optical scanners—not disputing the existence of paper ballots. Since optical scanners necessarily *require* paper ballots, any confusion on this point was entirely of the district court's own making. For these same reasons, we should disregard the district court's finding that the use of the terms "computerized voting," and "electronic voting systems" must be construed to mean the lack of paper ballots. *See Lake*, 643 F. Supp. 3d at 999, 1001.

Case: 23-16022, 03/28/2025, ID: 12925320, DktEntry: 38, Page 46 of 53

Rather than giving Lake and Finchem the benefit of the doubt, the district court took parts of the complaint out of context and construed them in the most unfavorable light. That isn't what Rule 11 is meant for. We should've reversed the sanctions order based on the paper-ballot allegations alone.

## B. Allegations about Testing of Arizona's Election Equipment

Next, the district court found sanctionable the complaint's allegations that Arizona's tabulation machines are not subject to "objective evaluation" or "neutral, expert analysis." *Lake*, 643 F. Supp. 3d at 1002 (quoting Paragraphs 20 and 57 of the complaint). The district court found these allegations false because the *defendant* in the case—the Arizona Secretary of State—had tested the equipment and because a company accredited by a federal election commission had also conducted testing. *Id.* at 1002–03.

First, whether the *defendant* tested the equipment does little to disprove these allegations. The whole point of the complaint was to request "objective" and "neutral" testing— not simply relying on the defendant's assurances. Rule 11 doesn't require one side to take the opposing side's word at face value.

Second, the complaint challenges whether the testing was sufficiently "objective" and "neutral." These are contested matters of judgment—not easily reduced to binary determinations of truth or falsity. To support their view, Lake and Finchem cited the allegations that the company that manufactures Arizona's optical scanners "has refused to disclose its software and other parts of its electronic voting system in order to subject it to neutral expert evaluation."

Case: 23-16022, 03/28/2025, ID: 12925320, DktEntry: 38, Page 47 of 53

Am. Compl. ¶ 69. The district court did not find that allegation false. Instead, it simply found the evidence that Maricopa County had its equipment tested by an accredited laboratory more compelling.

But this isn't the Rule 11 standard. Rule 11 doesn't require a complaint to be completely uncontradicted; it merely requires that allegations "have" or "will likely have evidentiary support." Fed. R. Civ. P. 11(b)(3). The complaint cleared that low threshold here.

## C. Claims Based on Speculation and Conjecture

The district court also found Parker and Olsen's conduct sanctionable because it ruled that Lake and Finchem "lacked an adequate factual or legal basis to support the wide-ranging constitutional claims they raised or the extraordinary relief they requested." *Lake*, 643 F. Supp. 3d at 1008. It's true that we ultimately found Lake and Finchem's claimed injuries too speculative to satisfy Article III standing. *See Lake*, 83 F.4th at 1201.

But "the pleader need not be correct in his view of the law." *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir. 1986) *abrogated on other grounds by Cooter & Gell*, 496 U.S. 384. Rule 11 sanctions don't apply when the "pleader" has "a 'good faith argument' for his or her view of what the law is, or should be." *Id.* at 831. Dismissing a complaint for lack of Article III standing "is not dispositive of the issue of sanctions." *Id.* at 830. Instead, to warrant sanctions, the filing must be "*both* baseless *and* made without a reasonable and competent inquiry." *Strom*, 641 F.3d at 1059 (simplified). "[T]o constitute a frivolous legal position for purposes of Rule 11 sanction, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the

law as it stands." *Id.* (simplified). So when "a suit rais[es] a novel issue of law as to which there is no caselaw to the contrary," Rule 11 sanctions are inappropriate—even if the suit is eventually dismissed. *Id.*

While this court agreed with the district court that Lake and Finchem lacked standing, we never said that they lacked a "good faith argument" for standing or that their position was contrary to directly controlling caselaw. *See Lake*, 83 F.4th at 1201. And this court never opined on the merits of their claims. We should reverse this finding of sanctionable conduct.

## D. Failure to Conduct a Reasonable Pre-Filing Inquiry

The district court also found sanctionable Parker and Olsen's failure to conduct a reasonable pre-filing inquiry. Because the complaint did not present clearly false statements or blatantly frivolous arguments, this finding was an abuse of discretion.

But more troubling is the district court's decision to impose a *heightened* pre-filing inquiry requirement on Parker and Olsen because of the nature of the complaint and the clients they represented. Because Parker and Olsen represented candidates for secretary of state and governor and they requested relief related to state elections, the district court held that the attorneys were "required" to conduct a "significant pre-filing inquiry." *Lake*, 643 F. Supp. 3d at 1009. Rather than applying the proper Rule 11 factors, the district court placed added burdens on these attorneys based on its "concern" for the "dangers posed by making wide-ranging allegations of vote manipulation in the current volatile political atmosphere." *Id.* But while Rule 11's pre-filing inquiry requirement depends on the circumstances of

Case: 23-16022, 03/28/2025, ID: 12925320, DktEntry: 38, Page 49 of 53

the case, including on "an assessment of the type of claim," *Townsend*, 929 F.2d at 1364, we have never held that certain subject matters automatically trigger a more stringent pre-filing inquiry requirement.

Indeed, this selective targeting of certain claims falls precisely into the concerns we raised in *Townsend*.

> Were vigorous advocacy to be chilled by the excessive use of sanctions, wrongs would go uncompensated. Attorneys, because of fear of sanctions, might turn down cases on behalf of individuals seeking to have the courts recognize new rights. They might also refuse to represent persons whose rights have been violated but whose claims are not likely to produce large damage awards. This is because attorneys would have to figure into their costs of doing business the risk of unjustified awards of sanctions.

*Townsend*, 929 F.2d at 1363–64. We should have reversed the sanctions order based on the district court's erroneous interpretation of Rule 11.

## II.

### 28 U.S.C. § 1927 Sanctions

The district court also sanctioned Parker and Olsen under § 1927 for filing a motion for a preliminary injunction. Under § 1927, an attorney may be sanctioned for "multipl[ying] the proceedings in any case unreasonably and vexatiously[.]" 28 U.S.C. § 1927. Like Rule 11, sanctions under § 1927 are "extraordinary" and must be "exercised with extreme caution." *In re Keegan Mgmt. Co., Sec. Litig.*,

Case: 23-16022, 03/28/2025, ID: 12925320, DktEntry: 38, Page 50 of 53

78 F.3d 431, 437 (9th Cir. 1996) (simplified). Section 1927 requires a finding of "subjective bad faith," meaning the attorney must have "knowingly or recklessly raise[d] a frivolous argument[.]" *Id.* at 436 (simplified).

At base, the district court found that Parker and Olsen acted recklessly because they (1) waited seven weeks after filing the complaint to seek a preliminary injunction, and (2) filed the motion fewer than four months before an election. But neither of those timing factors supports a finding of recklessness. Notwithstanding *Purcell*, parties will sometimes seek election-related relief within months of an election—and still prevail. *See, e.g., Republican Nat'l Comm. v. Mi Familia Vota*, 145 S. Ct. 108 (2024) (granting in part motion to stay district court's injunction); *see also Mi Familia Vota v. Petersen*, 111 F.4th 976 (9th Cir. 2024) (vacating motion panel's stay of district court's injunction). Even if the district court concluded that injunctive relief was inappropriate before the 2022 elections, it could have still considered an injunction applicable to future elections.

And the district court made no finding that the attorneys here subjectively filed the motion for a preliminary injunction seven weeks after the complaint *recklessly* or with *vexatious intent*. In a footnote, the district court speculated that Lake and Finchem's failure to seek "emergency relief" in the Ninth Circuit after the 2022 election—despite filing a Notice of Appeal—"raises questions about the good faith basis for their request for immediate relief[.]" *Lake*, 643 F. Supp. 3d at 1011 n.11. But the district court ignored that an emergency appeal to our court is reviewed deferentially— far from de novo. *See Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 399 (9th Cir. 2015) ("The court does not review the underlying merits of the case, but rather whether the district court relied on an erroneous legal

premise or abused its discretion in denying [a party's] motion for preliminary injunctive relief."). These different considerations counsel against presuming too much from the mere fact of failing to seek an emergency appeal.

Because the court also abused its discretion in ordering sanctions under § 1927, we should reverse the entire sanctions order.

## III.

### "Send[ing] a Message"

It must also be said that the district court improperly imposed sanctions to "send a message." *Lake*, 643 F. Supp. 3d at 1013. The district court declared that it "will not condone litigants ignoring the steps that Arizona has already taken toward [ensuring that its elections are secure and reliable] and furthering false narratives that baselessly undermine public trust at a time of increasing disinformation about, and distrust in, the democratic process." *Id.* It added that imposing sanctions on Parker and Olsen would "send a message to those who might file similarly baseless suits in the future." *Id.* The district court thus openly proclaimed its desire to chill certain litigation—any legal challenges to the State's election procedures.

This violates both the text and purpose of Rule 11. Nothing in its text authorizes judges to make an example of litigants to reassure the public. Its purpose is "to deter baseless filings," *Cooter & Gell*, 496 U.S. at 393, not to repair the "public trust." Nor does Rule 11 permit monetary sanctions to serve as a message to the public at large. That's why the Supreme Court has cautioned that any sanctions fees awarded must have a "causal link" to a *litigant's* misbehavior. *Goodyear Tire & Rubber Co. v. Haeger*, 581

U.S. 101, 108 (2017) ("[A] court, when using its inherent
sanctioning authority (and civil procedures), [needs] to
establish a causal link—between the litigant's misbehavior
and legal fees paid by the opposing party."). Sanctioning
attorneys to broadcast a district judge's displeasure with
certain positions on a politically charged issue offends the
"extreme caution" required under Rule 11. *See Operating
Eng'rs Pension Tr.*, 859 F.2d at 1345. While the district
court no doubt had good intentions, it was inappropriate to
use Parker and Olsen as a vehicle to communicate its views.

The Arizona Supreme Court—no stranger to hard-fought
election challenges—recognized the dangers of imposing
sanctions to send political messages as the district court did
here. It wisely cautioned,

> Our courts should be cautious that, in their
> zeal to ensure that election challenges are
> properly grounded in fact and law under the
> guise of defending an "election's
> legitimacy," they do not inadvertently inflict
> real damage to our republic by slamming the
> courthouse door on citizens and their counsel
> legitimately seeking to vindicate rights,
> which is also important to maintaining public
> confidence in elections.

*Ariz. Republican Party v. Richer*, 547 P.3d 356, 369 (Ariz.
2024). The Arizona Supreme Court then warned:

> "[R]aising questions" by petitioning our
> courts to clarify the meaning and application
> of our laws and noting the potential
> consequences of the failure to do so—

> particularly in the context of our elections—is never a threat to the rule of law, even if the claims are charitably characterized as "long shots." . . . During times of social and political contention and strife, we must be mindful that our courts provide a means of resolving such conflicts when issues are legitimately presented. By sanctioning parties and their lawyers for bringing debatable, long-shot complaints, courts risk chilling legal advocacy and citizens raising "questions" under the guise of defending the rule of law. Even if done inadvertently and with the best of intentions, such sanctions present a real and present danger to the rule of law.

*Id.*

    I couldn't have said it any better. I respectfully dissent.