**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| KARI LAKE; MARK FINCHEM, | No. 23-16022 |
| *Plaintiffs*, | D.C. No. 2:22-cv-00677-JJT |
| and | |
| ANDREW D. PARKER; PARKER DANIELS KIBORT, LLC; KURT B. OLSEN; OLSEN LAW, PC, Counsel for Plaintiffs, | OPINION |
| *Appellants*, | |
| v. | |
| BILL GATES, as a member of the Maricopa County Board of Supervisors; CLINT HICKMAN, as a member of the Maricopa County Board of Supervisors; JACK SELLERS, as a member of the Maricopa County Board of Supervisors; THOMAS GALVIN, as a member of the Maricopa County Board of Supervisors; STEVE GALLARDO, as a member of the Maricopa County Board of Supervisors, | |
| *Defendants-Appellees*, | |

and

ADRIAN FONTES, Arizona Secretary of State; MARICOPA COUNTY BOARD OF SUPERVISORS; REX SCOTT, as a member of the Pima County Board of Supervisors; MATT HEINZ, as a member of the Pima County Board of Supervisors; SHARON BRONSON, as a member of the Pima County Board of Supervisors; STEVE CHRISTY, as a member of the Pima County Board of Supervisors; ADELITA GRIJALVA, as a member of the Pima County Board of Supervisors; PIMA COUNTY BOARD OF SUPERVISORS,

*Defendants*.

Appeal from the United States District Court
for the District of Arizona
John Joseph Tuchi, District Judge, Presiding

Argued and Submitted September 11, 2024
San Francisco, California

Filed March 14, 2025

Before: Kim McLane Wardlaw, Ronald M. Gould, and
Patrick J. Bumatay, Circuit Judges.

Opinion by Judge Gould;
Dissent by Judge Bumatay

## **SUMMARY**[*]

### **Attorney Sanctions**

The panel affirmed the district court's imposition of sanctions under Federal Rule of Civil Procedure 11(c) and 28 U.S.C. § 1927 on plaintiffs' lead attorneys Andrew J. Parker and Kurt Olsen (collectively "Lead Attorneys") in an action concerning Arizona's voting system.

Plaintiffs filed a complaint in Arizona district court alleging that Arizona's current voting system, which relies upon electronic elements, insufficiently protects the rights of Arizona voters and must be replaced by a system using exclusively hand-counted paper ballots. The district court dismissed the operative complaint for lack of Article III standing, and this court affirmed. *Lake v. Fontes*, 83 F.4th 1199, 1204 (9th Cir. 2023) (per curiam). The district court subsequently granted defendants' motion for sanctions and held Lead Attorneys and their law firms liable for $122,200.00 in fees.

The panel held the district court did not abuse its discretion in awarding attorneys' fees under Rule 11(c) because Lead Attorneys made false, misleading, and unsupported factual assertions in their first amended

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

complaint ("FAC") and motion for preliminary injunction, and did not undertake a reasonable pre-filing inquiry.

Central among the false and misleading allegations identified by the district court were the claims that Arizona does not use paper ballots and that Arizona voting machines are not tested. The panel held that the district court did not abuse its discretion in finding that these factually misleading statements rendered the FAC factually insufficient and open to sanction. Further, the district court did not abuse its discretion in concluding that Lead Attorneys did not conduct a reasonable inquiry. Facts about the Arizona voting system are widely available, and the current voting system in which paper ballots are tabulated electronically has been in place for many years.

The panel further held that the district court's express finding that Lead Attorneys' behavior and timing in bringing a motion for a preliminary injunction was reckless and met the standard for bad faith under § 1927 was not clearly erroneous.

Dissenting, Judge Bumatay wrote that while the complaint may not have been drafted with perfect precision and Parker and Olsen might have played hardball with Arizona's attorneys, nothing they did was deceptive, intentionally false, or beyond the bounds of zealous advocacy. Read in context, their complaint challenged the reliability of Arizona's use of electronic systems to count ballots. They never asserted that Arizona did not use paper ballots, which drove the district court's sanctions decision. Moreover, the district court improperly imposed sanctions to "send a message" to other litigants who might raise election-law disputes.

## COUNSEL

Joseph A. Pull (argued) and Andrew D. Parker, Parker Daniels Kibort LLC, Minneapolis, Minnesota; Kurt Olsen, Olsen Law PC, Washington, D.C.; for Plaintiffs-Appellants.

Emily M. Craiger (argued), The Burgess Law Group LLC, Phoenix, Arizona; Joseph J. Branco, Assistant Counsel, Office of the Arizona Attorney General, Phoenix, Arizona; Sean M. Moore, Joseph E. La Rue, and Thomas P. Liddy, Deputy County Attorneys, Civil Services Division; Rachel H. Mitchell, Maricopa County Attorney; Maricopa County Attorney's Office, Phoenix, Arizona; for Defendants-Appellees.

## OPINION

GOULD, Circuit Judge:

Lead attorneys for the Plaintiffs, Andrew D. Parker and Kurt Olsen (collectively, "Lead Attorneys"), appeal the district court's imposition of sanctions under Federal Rule of Civil Procedure 11(c) and under 28 U.S.C. § 1927. We conclude that the district court did not abuse its discretion in awarding attorneys' fees under Rule 11(c) because Lead Attorneys made false, misleading, and unsupported factual assertions in their first amended complaint ("FAC") and motion for preliminary injunction and did not undertake a reasonable pre-filing inquiry. We further conclude that the district court's determination that the Lead Attorneys acted in bad faith was not clearly erroneous, and that it therefore did not err by imposing sanctions under 28 U.S.C. § 1927.

## BACKGROUND

The underlying dispute in this matter concerns Arizona's voting system. Plaintiffs filed a complaint in Arizona district court alleging that Arizona's current voting system, which relies upon electronic elements, insufficiently protects the rights of Arizona voters and must be replaced by a system using exclusively hand-counted paper ballots. Plaintiffs also filed a motion for a preliminary injunction seeking to prohibit the use of computerized equipment in the administration of Arizona elections. The district court dismissed the operative complaint for lack of Article III standing, and we affirmed. *Lake v. Fontes*, 83 F.4th 1199, 1204 (9th Cir. 2023) (per curiam).

On December 1, 2022, the district court granted Defendants' motion for sanctions, ordered the Plaintiffs to pay Defendants' attorneys' fees, and ordered the parties to file memoranda regarding the proper amount of attorneys' fees. Lead Attorneys and Defendants filed responsive briefing and, on May 24, 2023, the district court held oral argument on Defendants' application for attorneys' fees. On July 14, 2023, the district court issued an order granting in part and denying in part Defendants' application for attorneys' fees and staying the obligation to pay the fees pending resolution of all appeals. The district court's order held Lead Attorneys and their law firms liable for $122,200.00 in fees. This appeal follows.

## DISCUSSION

Although the substantive claim in this matter was dismissed for lack of standing, federal courts have jurisdiction over "collateral issues after an action is no longer pending," including costs, attorneys' fees, or sanctions, because such motions "are 'independent

proceeding[s] supplemental to the original proceeding and not a request for a modification of the original decree.'" *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 170 (1939)). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. *Kaass Law v. Wells Fargo Bank*, 799 F.3d 1290, 1292 (2015).

## I. Rule 11 Sanctions

Rule 11(b) states that, by "signing, filing, submitting or later advocating" for a "pleading, written motion, or other paper," an attorney certifies that:

> (1) it is not presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b). A complaint that does not comply with any one of these requirements gives grounds for monetary sanctions. *See* Fed. R. Civ. P. 11(c); *see also Truesdell v. S. Cal. Permanente Med. Grp.*, 293 F.3d 1146, 1153 (9th Cir. 2002). In analyzing whether a complaint is sanctionable under Rule 11, we employ an objective standard of reasonableness and do not consider the attorney's subjective

good faith. *Bus. Guides, Inc. v. Chromatic Commc'ns Enter., Inc.*, 892 F.2d 802, 811 (9th Cir. 1989), *aff'd* 498 U.S. 533 (1991) (holding that Rule 11 does not allow for a "pure heart, empty head" defense (citation omitted)).

We review the award of Rule 11 sanctions for abuse of discretion. *Montrose Chem. Corp. of Cal. v. Amer. Motorists Ins. Co.*, 117 F.3d 1128, 1133 (9th Cir. 1997). To impose sanctions under Rule 11, the district court must determine that a pleading is "*both* baseless *and* made without a reasonable and competent inquiry." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 434 (9th Cir. 1996) (quoting *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990)). "Because the district court is '[f]amiliar with the issues and litigants, the district court is better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard mandated by Rule 11.'" *Montrose Chemical Corp.*, 117 F.3d at 1133 (quoting *Cooter & Gell*, 496 U.S. at 402). A district court "necessarily abuse[s] its discretion if it base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell*, 496 U.S. at 405.

## A. Factual Support

The district court here held that the Lead Attorneys violated Rule 11 when they filed the FAC because the FAC contained baseless allegations. Central among these false and misleading allegations identified by the district court are the claims that Arizona does not use paper ballots and that Arizona voting machines are not tested. Lead Attorneys contend that the district court abused its discretion in determining that the FAC made such claims, which Lead Attorneys concede would be false. Lead Attorneys also

point to some supported allegations in the FAC, contending that this demonstrates that the factual allegations "have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

But the existence of some supported allegations does not insulate Lead Attorneys from sanctions based on other, unsupported allegations in the FAC. As previously explained, "the mere existence of one non-frivolous claim is not dispositive." *Townsend*, 929 F.2d at 1364. We instead consider whether the FAC, taken as a whole, is subject to sanction. *Id.* The FAC alleged that Arizona uses an electronic voting system that is subject to manipulation and that must be replaced by a paper voting system to protect Plaintiffs' voting rights. For this reason, the extent and manner of digitization in the current Arizona voting system is important in assessing the complaint as a whole. The allegations about Arizona not using paper ballots and suggestion it uses exclusively an "electronic voting system subject to manipulation" were not supported by any evidence placed in the record. And if unsupported factual allegations are present in the FAC, the district court did not abuse its discretion in imposing sanctions. *See Truesdell*, 293 F.3d at 1153–54.

Our review of the FAC demonstrates that all of the unsupported factual allegations identified by the district court are present. We consider first the most central and most contested of these unsupported allegations: that Arizona does not use paper ballots. Lead Attorneys argue that "the [first] amended complaint acknowledges, presumes, and requires that Arizona uses paper ballots." Yet, the FAC makes no mention of the current use of paper ballots. Instead, the FAC repeatedly refers to "electronic

voting machines" and asks that the court order "an election conducted by paper ballots, as an alternative to the current framework." A reasonable person reading the amended complaint would believe, contrary to the facts, that Arizona does not use paper ballots at all in its elections.

Similarly, though Lead Attorneys contend that they never alleged that "Arizona does not have objective, neutral, and expert testing processes for electronic voting machines," paragraph 57 of the amended complaint states that "Arizona intends to rely on electronic voting systems . . . without . . . subjecting them to neutral, expert analysis." The plain meaning of the text supports the district court's finding, and the district court did not abuse its discretion in finding that these factually misleading statements rendered the FAC factually insufficient and open to sanction. *See Truesdell*, 293 F.3d at 1153.

## B. Speculation and Reasonable Pre-Filing Inquiry

Lead Attorneys also challenge the district court's holding that their claims were based on "speculation and conjecture" and that Lead Attorneys did not conduct a reasonable pre-filing inquiry. As an initial matter, although Lead Attorneys contest the district court's characterization of the FAC as based on "speculation and conjecture," we have already used the same language in affirming the dismissal of the FAC for lack of standing. *See Lake*, 83 F.4th at 1204 (holding that the FAC posits only "conjectural allegations" and "speculation" as to any injury suffered by the plaintiffs). The district court did not abuse its discretion by reaching the same conclusion.

To be sanctioned under Rule 11, attorneys must file a pleading which is "*both* baseless *and* without a reasonable and competent inquiry." *In re Keegan Mgmt. Co., Sec.*

*Litig.*, 78 F.3d 431, 434 (9th Cir. 1996) (emphasis in original) (quoting *Townsend*, 929 F.2d at 1362). A reasonable inquiry is "an inquiry reasonable under all of the circumstances of a case." *Townsend*, 929 F.2d at 1364 (citation and quotation marks omitted). "As the Supreme Court noted, if a lawyer discovers that his [or her] client has a potential cause of action only a short time before the statute of limitations will expire, a more cursory inquiry will be tolerated than when he [or she] has ample time to investigate." *Id.* (citation omitted).

Further, the district court did not abuse its discretion in concluding that Lead Attorneys did not conduct a reasonable inquiry. As explained *supra* Section I.A, the FAC contained misleading and false statements about the Arizona voting system. Facts about the Arizona voting system are widely available, and the current voting system in which paper ballots are tabulated electronically has been in place for many years. As the district court stated, in presenting incorrect facts to the court, Lead Attorneys "either failed to conduct the reasonable and factual legal inquiry required under Rule 11, or they conducted such an inquiry and filed this lawsuit anyway." In either event, "after conducting an objectively reasonable inquiry into the facts and law," no reasonable attorney "would have found the complaint to be well-founded." *Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005) (citation omitted).

**C. Improper Motivation**

Lead Attorneys contend that the district court's sanctions were improperly motivated by a desire to suppress "litigation concerning Arizona's [electronic voting system]." In

support of this argument, plaintiffs' attorneys cite the district court's statement that

> Imposing sanctions in this case is not to ignore the importance of putting in place procedures to ensure that our elections are secure and reliable. It is to make clear that the Court will not condone litigants ignoring the steps that Arizona has already taken toward this end and furthering false narratives that baselessly undermine public trust at a time of increasing disinformation about, and distrust in, the democratic process. It is to send a message to those who might file similarly baseless suits in the future.

But Lead Attorneys mischaracterize the nature of the district court's concern. The district court's statement does not blanketly prohibit all voting-related litigation. Rather, the district court stressed that plaintiffs' attorneys are being sanctioned because they filed a *baseless* action. That the action concerns a topic of national concern only increases the importance of Rule 11's deterrent function. Ensuring that attorneys do not abuse the court process by filing misleading and false claims is a legitimate function of Rule 11 and is not undermined by the subject of the litigation. *See Cooter & Gell*, 496 U.S. at 393. To the contrary, that Lead Attorneys may mislead the public and cause baseless concern about a topic of national importance renders Rule 11's deterrent function more important than in cases of purely private concern.

## II.  28 U.S.C. § 1927

Lead Attorneys also contest the district court's imposition of sanctions pursuant to 28 U.S.C. § 1927. Under § 1927, an attorney may be required to pay "excess costs, expenses, and attorneys' fees" for "multipl[ying] the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. We have held that "[s]anctions pursuant to section 1927 must be supported by a finding of subjective bad faith." *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015) (citation omitted). "[B]ad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *Id.* (citation omitted).  The district court found that Lead Attorneys brought the motion for preliminary injunction in bad faith based on the motion's timing and its frivolous nature.

Whether an attorney acted recklessly or in bad faith is a factual finding that "[w]e will reverse . . . only if [it is] clearly erroneous." *Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1117 (9th Cir. 2000).  Here, the district court's finding was not clearly erroneous.  The motion for preliminary injunction was frivolous for the same reasons as the FAC, as it reiterated many of the same factual misrepresentations.  The timing of the motion further supports the district court's holding.  Plaintiffs waited nearly seven weeks after filing their initial complaint to file the motion for preliminary injunction, despite the alleged urgency of the situation.  By the time of the hearing on the preliminary injunction motion that sought a complete overhaul of the Arizona election system, less than four months remained before the next election.  In other words, the motion sought relief that was impossible under the time

constraints. The district court's express finding that this behavior was reckless and met the standard for bad faith under § 1927 is not clearly erroneous. We therefore affirm the district court's imposition of § 1927 sanctions.

## CONCLUSION

We affirm the district court's grant of Defendants' motion for sanctions.

**AFFIRMED.**

---

BUMATAY, Circuit Judge, dissenting:

In this case, candidates for political office—Kari Lake and Mark Finchem—sought to challenge the vote-counting procedures used by the State of Arizona. They feared that Arizona's use of electronic tabulation systems makes them susceptible to hacking by non-governmental actors. With the help of their attorneys, Andrew Parker and Kurt Olsen, Lake and Finchem filed a complaint that was ultimately unsuccessful. Indeed, I agreed that Lake and Finchem failed to persuasively establish standing to bring their claims. *See Lake v. Fontes*, 83 F.4th 1199, 1201 (9th Cir. 2023). But asserting an *unpersuasive* claim is different from asserting a *sanctionable* one. Rather than concluding this litigation, the district court sanctioned Parker and Olsen under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927.

While the complaint may not have been drafted with perfect precision and Parker and Olsen might have played hardball with Arizona's attorneys, nothing they did was deceptive, intentionally false, or beyond the bounds of zealous advocacy. Read in context, their complaint challenged the reliability of Arizona's use of electronic

systems to count ballots. They *never* asserted that Arizona did not use paper ballots, which drove the district court's sanctions decision. After all, voting with paper ballots was only part of their concern for the reliability of Arizona's vote counting procedures. And no party to the litigation was fooled. Arizona's attorneys fully understood the nature of the claims. But the district court pressed forward, seemingly concerned that the *public* might misconstrue their claims. How the public might misread the legalese of a complaint is not a basis for imposing sanctions.

Even more troubling, the district court expressly sanctioned Parker and Olsen to "send a message" to other litigants who might raise election-law disputes. *Lake v. Hobbs*, 643 F. Supp. 3d 989, 1013 (D. Ariz. 2022). That was improper. Sanctions are not a tool for punishing disfavored litigants or their attorneys. It should go without saying that sanctions cannot be weaponized against litigants with certain political views or beliefs. Nor should we use them to deter attorneys from representing the unpopular or the unorthodox. Long ago, we foresaw the dangers of Rule 11 abuse, warning that such sanctions "will be used to chill vigorous advocacy." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1364 (9th Cir. 1990) (en banc). That concern has come to pass.

Unfortunately, here in the Ninth Circuit, the message is now loud and clear: challenge an election, and judges stand with sanctions at the ready if they disapprove of your claim. Because this message threatens zealous advocacy and risks undermining the people's rights, I respectfully dissent.

## I.

### Rule 11 Sanctions Were Improper

"Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988). Rule 11 sets a "low bar" for attorneys to clear. *See Strom v. United States*, 641 F.3d 1051, 1059 (9th Cir. 2011). A district court abuses its discretion in imposing Rule 11 sanctions when it "base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

The district court identified four sets of sanctionable conduct: (1) false allegations in the complaint about the use of paper ballots; (2) false allegations in the complaint about the testing of Arizona's election equipment; (3) reliance on speculation and conjecture; and (4) failure to conduct a reasonable pre-filing inquiry. It was an abuse of discretion to sanction attorneys Parker and Olsen on these grounds.

### A. Allegations about Paper Ballots

At the heart of the district court's sanctions ruling was its belief that Lake and Finchem's complaint falsely stated that Arizona voters do not cast paper ballots. But that's wrong. First, the district court mischaracterized Lake and Finchem's argument. They did not dispute that Arizonans vote by paper ballot. Rather, their complaint sought to vindicate the right "to have their ballots, and all ballots cast together with theirs, counted accurately and transparently." Am. Compl. ¶ 2. So their challenge focused on the security and operability of Arizona's vote *counting* system. They argued that Arizona's use of electronic vote-counting systems made the process vulnerable to manipulation. *Id*. at

¶ 153.  Indeed, much of the complaint raised concerns about the hacking risks associated with vote-counting machines. They wanted to replace that electronic-tabulating system with one in which votes are tabulated by humans.  *Id*.  True, they argued that hand ballots must *also* be part of an accurate and transparent voting system.  But because they stressed vote *tabulation*—not vote casting—their argument neither asserts nor implies, as the district court wrongly concluded, that Arizona does not use paper ballots.  Only by misconstruing their arguments and drawing all inferences against Lake and Finchem did the district court reach its finding of sanctionable conduct.  The district court reasoned that their request for injunctive relief was "entirely frivolous because [Arizona is] already doing what [they] want the [State] to do."  *Lake*, 643 F. Supp. 3d at 998.  But Arizona's continued reliance on electronic tabulation is undisputed.  So the district court's view was simply wrong.

Second, the district court couldn't point to a single statement in the complaint that expressly said that Arizonans do not vote by paper ballot.  The district court itself admitted as much.  *Id.* ("Plaintiffs argue that 'none of these paragraphs say that Arizona does not use paper ballots.' . . .  That is true only in the most facile sense.").  This is reason enough to reverse the sanctions decision.  Rather than relying on clear language from the complaint, the district court cherry-picked isolated snippets and applied faulty logic to conclude that "Plaintiffs requested that the Court order Arizona to do something that they contend it is not currently doing: to use paper ballots."  *Id.*

Take the district court's reliance on Paragraph 7 of the complaint. Paragraph 7 said,

> Through this Action, Plaintiffs seek an Order that Defendants collect and count votes through a constitutionally acceptable process, which relies on tried and true precepts that mandates [sic] integrity and transparency. This includes votes cast by hand on verifiable paper ballots that maintains voter anonymity; votes counted by human beings, not by machines; and votes counted with transparency, and in a fashion observable to the public.

*Id*. The district court focused on a single phrase— "[t]his includes votes cast by hand on verifiable paper ballots that maintains voter anonymity"—to suggest that Lake and Finchem claimed Arizona voters do not currently use paper ballots. That's just wrong as a matter of logic. Read in context, the paragraph is advocating two things *in conjunction*: voting by paper ballot *and* vote counting by humans. It's undisputed that Arizona did not hand count votes. So Lake and Finchem were proposing a different voting system—one with both paper ballots and human tabulation—which did not then exist. This doesn't mean paper ballots were not already in use.

Likewise, the district court faulted Paragraph 153 of the complaint for stating that "Plaintiffs seek for the Court to Order, an election conducted by paper ballot, as an alternative to the current framework." *Id.* But the district court disregarded the context of that statement. Right before it was the header: "Voting on Paper Ballots and Counting

Those Votes by Hand Is the Most Effective and Presently the Only Secure Election Method." Am. Compl. at 38. And just after that statement were nine bullet points detailing how votes cast on paper ballots should be counted by hand. *Id.* at 38–39. Read in full, the complaint was again advocating both paper ballots and human tabulation. The district court improperly assumed that the "alternative" system referred to in Paragraph 153 must mean a different system in all respects from the current system. But an "alternative" framework need not be different in *every* respect. The fact that the proposed "alternative" framework includes votes cast on paper ballots—just like the current practice—does not suggest, let alone assert, that paper ballots are not already used.

Next, the district court took aim at Paragraphs 58 to 60 of the complaint because they described Arizona's move from an "auditable paper-based system" to a "computer-based system." *Lake*, 643 F. Supp. 3d at 998. The complaint alleged that "[b]illions of federal dollars were spent to move states, including Arizona, from paper-based voting systems to electronic, computer-based systems." Am. Compl. ¶ 57**.** The district court deemed these allegations false because they "more than impl[y] a transition away from paper ballots." *Lake*, 643 F. Supp. 3d at 999. To justify this, the district court cited the Election Assistance Commission's definition of a "paper-based voting system" as one that "records votes, counts votes, and tabulates the vote count, using one or more ballot cards or paper ballots." *Id.* But the district court ignored crucial context. Just one paragraph earlier, the complaint stated that "Arizona intends to rely on electronic voting systems to record some votes and to tabulate *all* votes cast in the State of Arizona in the 2022 Midterm Election[.]" Am. Compl. ¶ 57; *see also id.* ¶ 68

("[M]any Arizonans will cast their votes on Dominion [ballot marking devices], while nearly *all* Arizonans will have their votes tabulated with Dominion machines."). Earlier, the complaint explained why *some* voters must vote by electronic means: "[v]oters who may have hearing or visual impairments may cast their votes with the aid of electronic ballot marking devices[.]" *Id.* ¶ 16. So the complaint expressly recognized that Arizona uses electronic voting systems to record only "some" votes (i.e., those with disabilities). The direct implication is that the rest of votes are cast in another way (i.e., on paper ballots). But the main thrust of the complaint was not about how votes are cast but how they are counted. It alleged—correctly and uncontested—that "*all*" votes in Arizona are tabulated by "electronic voting systems."

Indeed, the complaint explicitly stated that "[e]very county in Arizona intends to tabulate votes cast . . . through optical scanners[.]" Am. Compl. ¶ 14. As the name implies, "optical scanners" scan paper ballots. The complaint then directly challenged the use of optical scanners, arguing that "[e]very county in Arizona . . . can simply and securely count votes cast on *paper ballots* without using centralized machine-counting or computerized optical scanners." *Id.* ¶ 154 (emphasis added). This makes clear the complaint's focus was on opposing the use of optical scanners—not disputing the existence of paper ballots. Since optical scanners necessarily *require* paper ballots, any confusion on this point was entirely of the district court's own making. For these same reasons, we should disregard the district court's finding that the use of the terms "computerized voting," and "electronic voting systems" must be construed to mean the lack of paper ballots. *See Lake*, 643 F. Supp. 3d at 999, 1001.

LAKE V. GATES                    21

Rather than giving Lake and Finchem the benefit of the doubt, the district court took parts of the complaint out of context and construed them in the most unfavorable light. That isn't what Rule 11 is meant for. We should've reversed the sanctions order based on the paper-ballot allegations alone.

## B. Allegations about Testing of Arizona's Election Equipment

Next, the district court found sanctionable the complaint's allegations that Arizona's tabulation machines are not subject to "objective evaluation" or "neutral, expert analysis." *Lake*, 643 F. Supp. 3d at 1002 (quoting Paragraphs 20 and 57 of the complaint). The district court found these allegations false because the *defendant* in the case—the Arizona Secretary of State—had tested the equipment and because a company accredited by a federal election commission had also conducted testing. *Id.* at 1002–03.

First, whether the *defendant* tested the equipment does little to disprove these allegations. The whole point of the complaint was to request "objective" and "neutral" testing— not simply relying on the defendant's assurances. Rule 11 doesn't require one side to take the opposing side's word at face value.

Second, the complaint challenges whether the testing was sufficiently "objective" and "neutral." These are contested matters of judgment—not easily reduced to binary determinations of truth or falsity. To support their view, Lake and Finchem cited the allegations that the company that manufactures Arizona's optical scanners "has refused to disclose its software and other parts of its electronic voting system in order to subject it to neutral expert evaluation."

Am. Compl. ¶ 69. The district court did not find that allegation false. Instead, it simply found the evidence that Maricopa County had its equipment tested by an accredited laboratory more compelling.

But this isn't the Rule 11 standard. Rule 11 doesn't require a complaint to be completely uncontradicted; it merely requires that allegations "have" or "will likely have evidentiary support." Fed. R. Civ. P. 11(b)(3). The complaint cleared that low threshold here.

## C. Claims Based on Speculation and Conjecture

The district court also found Parker and Olsen's conduct sanctionable because it ruled that Lake and Finchem "lacked an adequate factual or legal basis to support the wide-ranging constitutional claims they raised or the extraordinary relief they requested." *Lake*, 643 F. Supp. 3d at 1008. It's true that we ultimately found Lake and Finchem's claimed injuries too speculative to satisfy Article III standing. *See Lake*, 83 F.4th at 1201.

But "the pleader need not be correct in his view of the law." *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir. 1986) *abrogated on other grounds by Cooter & Gell*, 496 U.S. 384. Rule 11 sanctions don't apply when the "pleader" has "a 'good faith argument' for his or her view of what the law is, or should be." *Id.* at 831. Dismissing a complaint for lack of Article III standing "is not dispositive of the issue of sanctions." *Id.* at 830. Instead, to warrant sanctions, the filing must be "*both* baseless *and* made without a reasonable and competent inquiry." *Strom*, 641 F.3d at 1059 (simplified). "[T]o constitute a frivolous legal position for purposes of Rule 11 sanction, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the

law as it stands." *Id.* (simplified). So when "a suit rais[es] a novel issue of law as to which there is no caselaw to the contrary," Rule 11 sanctions are inappropriate—even if the suit is eventually dismissed. *Id.*

While this court agreed with the district court that Lake and Finchem lacked standing, we never said that they lacked a "good faith argument" for standing or that their position was contrary to directly controlling caselaw. *See Lake*, 83 F.4th at 1201. And this court never opined on the merits of their claims. We should reverse this finding of sanctionable conduct.

### D. Failure to Conduct a Reasonable Pre-Filing Inquiry

The district court also found sanctionable Parker and Olsen's failure to conduct a reasonable pre-filing inquiry. Because the complaint did not present clearly false statements or blatantly frivolous arguments, this finding was an abuse of discretion.

But more troubling is the district court's decision to impose a *heightened* pre-filing inquiry requirement on Parker and Olsen because of the nature of the complaint and the clients they represented. Because Parker and Olsen represented candidates for secretary of state and governor and they requested relief related to state elections, the district court held that the attorneys were "required" to conduct a "significant pre-filing inquiry." *Lake*, 643 F. Supp. 3d at 1009. Rather than applying the proper Rule 11 factors, the district court placed added burdens on these attorneys based on its "concern" for the "dangers posed by making wide-ranging allegations of vote manipulation in the current volatile political atmosphere." *Id.* But while Rule 11's pre-filing inquiry requirement depends on the circumstances of

the case, including on "an assessment of the type of claim," *Townsend*, 929 F.2d at 1364, we have never held that certain subject matters automatically trigger a more stringent pre-filing inquiry requirement.

Indeed, this selective targeting of certain claims falls precisely into the concerns we raised in *Townsend*.

> Were vigorous advocacy to be chilled by the excessive use of sanctions, wrongs would go uncompensated. Attorneys, because of fear of sanctions, might turn down cases on behalf of individuals seeking to have the courts recognize new rights. They might also refuse to represent persons whose rights have been violated but whose claims are not likely to produce large damage awards. This is because attorneys would have to figure into their costs of doing business the risk of unjustified awards of sanctions.

*Townsend*, 929 F.2d at 1363–64. We should have reversed the sanctions order based on the district court's erroneous interpretation of Rule 11.

## II.

### 28 U.S.C. § 1927 Sanctions

The district court also sanctioned Parker and Olsen under § 1927 for filing a motion for a preliminary injunction. Under § 1927, an attorney may be sanctioned for "multipl[ying] the proceedings in any case unreasonably and vexatiously[.]" 28 U.S.C. § 1927. Like Rule 11, sanctions under § 1927 are "extraordinary" and must be "exercised with extreme caution." *In re Keegan Mgmt. Co., Sec. Litig.*,

78 F.3d 431, 437 (9th Cir. 1996) (simplified).  Section 1927 requires a finding of "subjective bad faith," meaning the attorney must have "knowingly or recklessly raise[d] a frivolous argument[.]"  *Id.* at 436 (simplified).

At base, the district court found that Parker and Olsen acted recklessly because they (1) waited seven weeks after filing the complaint to seek a preliminary injunction, and (2) filed the motion fewer than four months before an election.  But neither of those timing factors supports a finding of recklessness.  Notwithstanding *Purcell*, parties will sometimes seek election-related relief within months of an election—and still prevail.  *See, e.g., Republican Nat'l Comm. v. Mi Familia Vota*, 145 S. Ct. 108 (2024) (granting in part motion to stay district court's injunction); *see also Mi Familia Vota v. Petersen*, 111 F.4th 976 (9th Cir. 2024) (vacating motion panel's stay of district court's injunction). Even if the district court concluded that injunctive relief was inappropriate before the 2022 elections, it could have still considered an injunction applicable to future elections.

And the district court made no finding that the attorneys here subjectively filed the motion for a preliminary injunction seven weeks after the complaint *recklessly* or with *vexatious intent*.  In a footnote, the district court speculated that Lake and Finchem's failure to seek "emergency relief" in the Ninth Circuit after the 2022 election—despite filing a Notice of Appeal—"raises questions about the good faith basis for their request for immediate relief[.]"  *Lake*, 643 F. Supp. 3d at 1011 n.11.  But the district court ignored that an emergency appeal to our court is reviewed deferentially— far from de novo.  *See Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 399 (9th Cir. 2015) ("The court does not review the underlying merits of the case, but rather whether the district court relied on an erroneous legal

premise or abused its discretion in denying [a party's] motion for preliminary injunctive relief."). These different considerations counsel against presuming too much from the mere fact of failing to seek an emergency appeal.

Because the court also abused its discretion in ordering sanctions under § 1927, we should reverse the entire sanctions order.

## III.

## "Send[ing] a Message"

It must also be said that the district court improperly imposed sanctions to "send a message." *Lake*, 643 F. Supp. 3d at 1013. The district court declared that it "will not condone litigants ignoring the steps that Arizona has already taken toward [ensuring that its elections are secure and reliable] and furthering false narratives that baselessly undermine public trust at a time of increasing disinformation about, and distrust in, the democratic process." *Id.* It added that imposing sanctions on Parker and Olsen would "send a message to those who might file similarly baseless suits in the future." *Id.* The district court thus openly proclaimed its desire to chill certain litigation—any legal challenges to the State's election procedures.

This violates both the text and purpose of Rule 11. Nothing in its text authorizes judges to make an example of litigants to reassure the public. Its purpose is "to deter baseless filings," *Cooter & Gell*, 496 U.S. at 393, not to repair the "public trust." Nor does Rule 11 permit monetary sanctions to serve as a message to the public at large. That's why the Supreme Court has cautioned that any sanctions fees awarded must have a "causal link" to a *litigant's* misbehavior. *Goodyear Tire & Rubber Co. v. Haeger*, 581

U.S. 101, 108 (2017) ("[A] court, when using its inherent sanctioning authority (and civil procedures), [needs] to establish a causal link—between the litigant's misbehavior and legal fees paid by the opposing party."). Sanctioning attorneys to broadcast a district judge's displeasure with certain positions on a politically charged issue offends the "extreme caution" required under Rule 11. *See Operating Eng'rs Pension Tr.*, 859 F.2d at 1345. While the district court no doubt had good intentions, it was inappropriate to use Parker and Olsen as a vehicle to communicate its views.

The Arizona Supreme Court—no stranger to hard-fought election challenges—recognized the dangers of imposing sanctions to send political messages as the district court did here. It wisely cautioned,

> Our courts should be cautious that, in their zeal to ensure that election challenges are properly grounded in fact and law under the guise of defending an "election's legitimacy," they do not inadvertently inflict real damage to our republic by slamming the courthouse door on citizens and their counsel legitimately seeking to vindicate rights, which is also important to maintaining public confidence in elections.

*Ariz. Republican Party v. Richer*, 547 P.3d 356, 369 (Ariz. 2024). The Arizona Supreme Court then warned:

> "[R]aising questions" by petitioning our courts to clarify the meaning and application of our laws and noting the potential consequences of the failure to do so—

> particularly in the context of our elections—
> is never a threat to the rule of law, even if the
> claims are charitably characterized as "long
> shots." . . . During times of social and
> political contention and strife, we must be
> mindful that our courts provide a means of
> resolving such conflicts when issues are
> legitimately presented.     By sanctioning
> parties and their lawyers for bringing
> debatable, long-shot complaints, courts risk
> chilling legal advocacy and citizens raising
> "questions" under the guise of defending the
> rule of law.  Even if done inadvertently and
> with the best of intentions, such sanctions
> present a real and present danger to the rule
> of law.

*Id.*

I couldn't have said it any better.  I respectfully dissent.